BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ACETAMINOPHEN – ASD/ADHD PRODUCT LIABILITY LITIGATION | MDL DOCKET NO. 3043 |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO TRANSFER ACTIONS TO THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

Defendants do not dispute that in addition to the scores of cases now pending across the country, hundreds of thousands more plaintiffs are positioned to allege that taking acetaminophen during pregnancy caused Autistic Spectrum Disorder ("ASD") and Attention-Deficit Hyperactivity Disorder ("ADHD").  Defendants also do not dispute that they sell acetaminophen products under Defendants' own brand names, and those products were consumed by pregnant mothers.  And they do not dispute that the active ingredient and chemical composition of every acetaminophen product is the same.  What is more, they do not dispute that the coming acetaminophen cases will face the same preemption defense.  Given all this agreement, consolidation should be close to automatic.  But according to Defendants, the Panel should not consolidate because still *more* defendants may be sued.  Even if that were true, each present and future defendant has made or supplied the same product: acetaminophen.  Thus, these future cases are not an argument *against* consolidation; they are an argument *for* it.  Indeed, this Panel has rules designed to accommodate such "tag-along" actions.  JPML R. 6.2(d), 7.1, 7.2.

The only question really left open, then, is *where* to locate the MDL.  And on that question, Defendants have little to say.  They cannot dispute that the Northern District of California would

be convenient and has the experience needed to handle a major national MDL like this one. Moreover, Judge Jon Tigar in that court is already handling a different type of acetaminophen labeling case that will involve the same preemption defense that will be raised in ASD and ADHD cases. Should the Panel decide against Judge Tigar, however, we agree with Target and Plaintiff Funk that the MDL would be ably handled by Judge Menendez in the District of Minnesota.

**I.       Defendants do not dispute that the statutory consolidation factors are satisfied.**

Defendants do not dispute that the Panel readily consolidates products-liability cases where "all plaintiffs allege they were injured by the same product in the same manner," which "indicat[es that] common factual issues will arise concerning the potential risks associated with the use of" the allegedly defective product at issue. *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 330 F. Supp. 3d 1378, 1378 (J.P.M.L. 2018). Defendants also do not dispute that the Related Actions allege the same operative facts—that Plaintiffs were injured because their mothers took Defendants' defective acetaminophen products while pregnant. Nor *could* they dispute any of this. All of the complaints allege that Defendants:

- sold the defective acetaminophen Products under Defendants' own brand names to the general public, including to pregnant women;
- knew that prenatal exposure to acetaminophen causes ASD and/or ADHD; and
- failed to warn of the effects of prenatal exposure to acetaminophen.

Further, every complaint alleges that pregnant women used Defendants' branded acetaminophen Products, causing their children to develop ASD, ADHD, or both.

Relying on these same facts, Plaintiffs also allege similar legal theories, including failure to warn, negligence, breach of warranty, violation of consumer protection laws, and misrepresentation. That overlap in legal theories counsels in favor of consolidation. *See In re Power Morcellator Prods. Liability Litig.*, 140 F. Supp. 3d 1351, 1353 (J.P.M.L. 2015) (finding

2

"common factual questions" regarding design, testing, and manufacture of products); *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liability Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013) (centralization warranted when "actions share core issues of fact concerning the design, manufacture, testing, and marketing" of product). Thus, "[i]ssues concerning general causation, the background science, regulatory history, and marketing will be common to all [acetaminophen] actions," and "[c]entralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* and other issues, and conserve the resources of the parties, their counsel, and the judiciary." *In re Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, 176 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016).

Defendants' own responses reinforce the value of centralization. According to Walmart, "[a] straightforward preemption argument should resolve the vast majority of these cases at the dismissal stage." Dkt. No. 46 at 2. If so, consolidation is especially important. Preemption doctrine flows from the Supremacy Clause of the U.S. Constitution, which requires that federal law trumps conflicting state law. Permitting that question to be answered by multiple federal judges, construing the laws of multiple states, will waste the judges' time while risking inconsistent adjudications. Better to have one judge handle the task. Meanwhile, other defendants are already reaping the benefits of coordination. CVS, Walgreen, Costco, and Rite Aid filed coordinated Responses to Plaintiffs' Motion. *See* Dkt. Nos. 50 & 51. If Defendants get their wish and avoid, or postpone, consolidation, they will lose that benefit—as will the courts.

A. **Nothing about having multiple defendants prevents consolidation.**

None of Defendants' objections bears scrutiny. According to Defendants, the Related Actions "are specifically ill suited for consolidation because they involve competing defendants in a single industry." Dkt. No. 46 at 8; *see also* Dkt. No. 48 at 2 (same). In the same breath, however, Defendants concede that many of their products are made by the same companies. *See* Dkt. No.

51 at 14 (stating that LNK International is a supplier of CVS, Walgreens, and Costco acetaminophen); Dkt. No. 44 at 3 (stating that LNK International also supplies Safeway acetaminophen); Dkt. No. 50 at 4 (listing other common acetaminophen manufacturers for CVS, Walgreens, and Costco). It is thus incorrect to say that "factual commonality across the actions appears to be superficial at best." Dkt. No. 46 at 9. According to Defendants, the commonality here runs more deeply even than Plaintiffs said.

Defendants also ignore the key factual question that must be asked in every Related Action: *Does exposure to acetaminophen—which is chemically identical in all of Defendants' products—cause a fetus in utero to develop ASD or ADHD?* That is not a "superficial" point of commonality. It goes to the crux of each and every action, and it renders irrelevant the number of defendants in these cases. For this reason, too, the Panel should consolidate. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020) (consolidating cases against dozens of different defendants that manufactured, sold, or distributed Zantac); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381 (J.P.M.L. 2019) ("All of the valsartan actions will raise these issues, regardless of whether the alleged supplier of the valsartan API was ZHP, Mylan,7 Hetero Labs Limited, or some other entity."); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017) (consolidating cases against different manufacturers and distributors of prescription opioids).

  **B.** **Nothing about Plaintiffs having unique injuries prevents consolidation.**

Nor is it any answer to say that Plaintiffs suffered ASD and ADHD in unique ways. That is always true in personal-injury cases. Here, some plaintiffs have debilitating conditions and require guardians to make legal and medical decisions on their behalf. Others suffer hardships that can be mitigated with medical help. None of that variance is a serious basis to deny consolidation,

which is why Defendants point to no case in which this Panel rejected consolidation because similar injuries were not identical. Indeed, this Panel has repeatedly and recently consolidated cases in the face of differing injuries. *See, e.g.*, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 437 F. Supp. 3d at 136970 (claims consolidated where injuries involved at least ten types of cancer); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 137879 (claims consolidated where injuries involved (a) municipalities paying for police, fire, and emergency responses; (b) hospitals paying for treatment costs; and (c) babies suffering from addictions gained in utero); *In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Prod. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (rejecting argument that cases should not be consolidated because of differing injuries suffered by plaintiffs).

Despite individual injuries, the overlapping legal and factual claims here will predominate during pre-trial proceedings. To cite but a few examples, the Related Actions will require extensive discovery on Defendants' knowledge of the effects of prenatal exposure to acetaminophen, the studies they commissioned to get that knowledge, and whether the risks of using acetaminophen during pregnancy outweigh the benefits. Given this overlap, centralization will "eliminate duplicative discovery; prevent inconsistent pretrial rulings . . . ; and conserve the resources of the parties, their counsel and the judiciary." *In re: Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Practices Litig.*, 26 F. Supp. 3d 1392, 139394 (J.P.M.L. 2014).

II.     **The best transferee court is the Northern District of California.**

Defendants protest that the Northern District of California is poorly located for an MDL, when in fact it is convenient, has a manageable set of MDLs, and resolves cases efficiently.

Moreover, Walmart's preview of its preemption argument, which other Defendants will surely make, confirms that one judge on the Northern District, Judge Jon Tigar, is especially well suited to preside over this MDL. This is because Judge Tigar is already considering a similar

version of Walmart's preemption argument in an economic-injury case involving acetaminophen sold by retailer Albertsons. *See* No. 4:22-cv-02948, *Morgan v. Albertsons Cos., Inc.*, Dkt. 16 (motion to dismiss raising preemption defense to demand for changed acetaminophen label). Because preemption is a complete defense, it will be efficient to send these cases to a judge already considering the matter.

It is true that the plaintiffs in the California case recently amended, leading Judge Tigar to dismiss the pending motion to dismiss as moot. But the new complaint raises the same labeling issues as the last. *See* No. 4:22-cv-02948, *Morgan v. Albertsons Cos., Inc.*, Dkt. 19 (amended complaint challenging labels claiming that acetaminophen product is "Rapid Release"). So by the time an acetaminophen MDL gets underway before Judge Tigar, he will already be familiar with the preemption issues at stake thanks to his existing acetaminophen case.

What is more, Defendant Safeway is headquartered in the Northern District of California, confirming the convenience of that venue to both Plaintiffs and Defendants. By contrast, *none* of the Related Actions is pending in the District of New Jersey or any district in New York. Two actions are pending in the Western District of Arkansas, but that court is remote. Fayetteville has only a regional airport, and the closest major airport is 100 miles away in Tulsa. By contrast, travel to Judge Tigar's court is easily facilitated by myriad daily flights into either the Oakland International Airport or the San Francisco International Airport.

However, if the Panel seeks an alternative to the Northern District of California, it should accept Target's suggestion of the District of Minnesota, Dkt. No. 48 at 11 – 13; *see also* Pl. Funk Response, Dkt. 3, as it is a centrally located forum easily reached via a major airport with cases there already pending before Judge Kate Menendez.

## Conclusion

The many recently filed acetaminophen cases call for an MDL. Nothing Defendants have

said counsels otherwise.  The best forum to avoid potentially conflicting preemption rulings is before Judge Tigar in the Northern District of California, but Judge Menendez in the District of Minnesota would also do an admirable job.  We respectfully request that the Panel transfer all Related Actions and tag-along cases to one of those two courts.

August 9, 2022                                                  Respectfully submitted,

*/s/ Mikal C. Watts*
Mikal Watts
WATTS GUERRA LLC
Millennium Park Plaza RFO, Suite 410, C112
Guaynabo, Puerto Rico 00966
Phone: (210) 447-0500
Fax: (210) 447-0501
Email: mcwatts@wattsguerra.com

**ATTORNEY FOR PLAINTIFFS AUJENAI THOMPSON, INDIVIDUALLY AND AS GUARDIAN AD LITEM OF J.D., A MINOR**
