**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

IN RE: ACETAMINOPHEN - ASD/ADHD                          MDL No. 3043
PRODUCTS LIABILITY LITIGATION

**TRANSFER ORDER**

**Before the Panel:**[*] Plaintiff in one action (*Thompson*) moves under 28 U.S.C. § 1407 to centralize this litigation in the Northern District of California or, alternatively, the District of Minnesota.  This litigation currently consists of eighteen actions pending in seven districts, as listed on Schedule A.[1]  Since the filing of the motion, the Panel has been notified of 47 related actions.[2]

All responding plaintiffs support centralization, but vary on the appropriate transferee district.  Most support the Northern District of California or the District of Minnesota as their first or second choice for transferee district.  Certain other plaintiffs suggest the Western District of Missouri, the Central District of California, or the District of Nevada.  All responding defendants oppose centralization.[3]  If the actions are centralized over their objections, CVS, Costco, Walgreens, Rite Aid, and Safeway suggest the District of New Jersey or the Southern or Eastern District of New York; Walmart proposes the Western District of Arkansas for a Walmart-specific MDL; and Target proposes the District of Minnesota for a Target-specific or industrywide MDL. Safeway additionally suggests the Eastern or Western District of Michigan as potential venues. Family Dollar requests exclusion from any MDL.

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact, and that centralization in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.  All actions present common factual questions arising from the allegation that plaintiffs used over-the-counter generic acetaminophen products while pregnant and, as a result of

---

[*] Judge Nathaniel M. Gorton, Judge David C. Norton, and Judge Roger T. Benitez did not participate in the decision of this matter.

[1] A nineteenth action on the motion for centralization was voluntarily dismissed.

[2] These and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1 and 7.2.

[3] Walmart Inc.; CVS Pharmacy, Inc.; Walgreen Co.; Costco Wholesale Corporation; Rite-Aid Corporation; Safeway, Inc.; Target Corporation; Family Dollar Inc.; and Dollar Tree Inc.

prenatal exposure to acetaminophen, their children developed autism spectrum disorder (ASD), attention deficit hyperactivity disorder (ADHD), or both.  The common factual questions include: (1) whether prenatal exposure to acetaminophen can cause ASD and ADHD; (2) whether and when defendants knew or should have known of the risk based on, *inter alia*, studies allegedly linking acetaminophen to ASD and ADHD; and (3) the alleged role and potential responsibility of common suppliers of the acetaminophen products at issue.[4]  Thus, the issues concerning general causation, the background science, and regulatory history will be substantially the same in all actions.  Additionally, all defendants are likely to assert the same preemption defense in each action.

In opposing centralization, defendants principally argue that (1) common factual questions are lacking; (2) centralization is premature; (3) centralization of competing defendants in an industrywide MDL will be inefficient; and (4) alternatives to centralization are practicable. We find these arguments unpersuasive.

First, defendants assert that factual differences across the actions undercut any common factual questions – as examples, each retailer sells different acetaminophen products sourced from different suppliers, the alleged ASD and ADHD injuries allegedly are different medical conditions with distinct causes and risk factors, and plaintiff-specific causation issues pertaining to each mother's usage of acetaminophen will be at issue.  But the common factual core in these nearly identical actions far outweighs the plaintiff-specific differences:  that is, whether prenatal exposure to acetaminophen caused plaintiffs' children to develop ASD or ADHD.  Although defendants sell different store brands of acetaminophen products, the active ingredient at issue is the same in all actions:  acetaminophen.  As to differences in the claimed injuries, plaintiffs commonly allege that ASD and ADHD are both neurodevelopmental disorders caused by acetaminophen's in utero impact on brain development.  These common factual allegations, which are central to all actions, are sufficient to warrant centralization.  Undoubtedly, there also will be plaintiff-specific causation issues.  But as the Panel often has recognized, "[a]lmost all personal injury litigation involves questions of causation that are plaintiff specific. Those differences are not an impediment to centralization where common questions of fact predominate."  *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1403 (J.P.M.L. 2014).

Defendants also assert that centralization is premature because indispensable parties – the manufacturers of their acetaminophen products – have not been sued.  A determination of whether the manufacturers are indispensable parties, or otherwise bear responsibility for the injuries allegedly caused by acetaminophen, is beyond the Panel's authority.  *See, e.g., In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) (rejecting defendants' objections concerning the "viability of plaintiffs' claims," stating that "[t]he framers of Section 1407 did not contemplate that the Panel would decide the merits of the actions before it and neither the statute nor the implementing Rules of the Panel are drafted to allow for such determinations.") (internal quotation marks and citation omitted).  Additionally, we note that information about the interested parties has been developed in the Panel record and, in these circumstances, the question of centralization may be decided even though all potential defendants

[4] For example, defendants represent that LNK International, Inc., is a manufacturer of generic acetaminophen products for CVS, Costco, Walgreens, Rite Aid, and Safeway, and that Perrigo Company plc is a manufacturer for CVS, Costco, Walgreens, and Safeway.

have not been named.  *See In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1376 (J.P.M.L. 2018) (centralizing actions in which plaintiffs "anticipated naming additional defendants following discovery," observing that the Panel record contained sufficient information about "key actors" involved in the alleged wrongful conduct).

In opposition to an industrywide MDL, defendants argue that labeling and sourcing practices will differ by retailer and, because they are direct competitors of each other, complexities and delay will result from the need to protect against the disclosure of confidential information. In our judgment, a single MDL encompassing all defendants is necessary to ensure the just and efficient conduct of this litigation.  In many situations, we are hesitant to bring together actions involving separate defendants and products, but as we previously have determined, significant overlap in central factual issues, parties, and claims warrants creation of a single MDL.[5]  A single MDL is the most appropriate vehicle for resolving defendants' common defenses concerning preemption and general causation, in addition to discovery of common suppliers, regulatory agencies, and other third parties.  Although there likely will be some retailer-specific issues, Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not significant where the actions arise from a common factual core.  We are confident that the transferee judge can accommodate any issues involving the different products and defendants, including confidentiality and retailer-specific discovery, in a manner that guarantees the just and efficient resolution of all cases.

Defendants' suggestion of alternatives to transfer also is unpersuasive. Neither informal coordination nor Section 1404 provides a practicable alternative given the number of involved actions, districts, parties, and counsel. There are 65 actions (including potential tag-along actions) pending in eight districts nationwide. The actions involve eight distinct groups of plaintiffs' counsel, and nine competing defendants: CVS, Costco, Family Dollar, Rite Aid, Safeway, Sam's Warehouse, Target, Walgreens, and Walmart.  Additionally, there is a strong likelihood of more potential tag-along actions considering the tag-along activity to date.  We have determined that, on this record, there are significant, and likely insurmountable, obstacles to achieving efficient informal coordination or eliminating the multidistrict character of the litigation through Section

---

[5] *See, e.g., In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381 & n.8 (J.P.M.L. 2019) (centralizing 10 actions in industry-wide MDL; "the actions . . . encompass alleged industry-wide issues concerning the production of the valsartan active pharmaceutical ingredient" and "most consumers . . . were dispensed more than one manufacturer's products"); *In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) (centralizing 20 actions in an industry-wide MDL; "while we typically are hesitant to centralize litigation on an industry-wide basis, here all fluoroquinolone actions, regardless of the manufacturer, will share factual questions regarding general causation (in particular, the biological mechanism of the alleged injury), the background science, and common regulatory issues"); *In re Androgel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (centralizing 45 actions involving competing testosterone replacement therapy products; "[all] actions will share factual questions regarding general causation and the background science regarding the role of testosterone in the aging body . . . as well as involve common regulatory issues").

1404 transfer motions.  Moreover, informal coordination appears insufficient to address the risk of inconsistent rulings on core discovery issues, preemption, and general causation.

While any number of transferee districts could ably handle this litigation, we are persuaded that the Southern District of New York is the appropriate transferee district for this litigation. Defendants represent that many of the manufacturers supplying the retailer defendants are based in or near New York, and thus significant common evidence is expected to be located in this area. Five defendants support the Southern District of New York as an appropriate district if the actions are centralized over their objection.[6]  We select Judge Denise L. Cote as the transferee judge.  This complex industrywide litigation is in need of an experienced transferee judge, a point on which nearly all parties agree.  Judge Cote is thoroughly familiar with the nuances of complex, multidistrict litigation by virtue of having presided over eight MDLs which have involved a broad range of complex issues, including pharmaceutical products liability and industrywide dockets. She is an experienced jurist who is willing and able to efficiently manage this litigation.  We are confident that Judge Cote will steer this controversy on a prudent and expeditious course.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Southern District of New York are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Denise L. Cote for coordinated or consolidated pretrial proceedings.


PANEL ON MULTIDISTRICT LITIGATION


Karen K. Caldwell
Chair

Matthew F. Kennelly          Dale A. Kimball
Madeline Cox Arleo

---

[6] The absence of a related action in the transferee district is no obstacle to assignment of the actions there. The Panel has recognized that, where the parties are located nationwide, "the location of the currently filed cases is not a particularly important factor in our decision."  *See In re BP Securities Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (citing *In re Southwestern Life Ins. Co. Sales Practices Litig.*, 268 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003)).

IN RE: ACETAMINOPHEN - ASD/ADHD                          MDL No. 3043
PRODUCTS LIABILITY LITIGATION


## SCHEDULE A


### Western District of Arkansas

ROBERTS v. WAL−MART STORES, INC., C.A. No. 5:22−05108
HATFIELD v. WAL−MART STORES, INC., C.A. No. 5:22−05109

### Central District of California

JOHNSON, ET AL. v. WALGREENS BOOTS ALLIANCE, ET AL.,
    C.A. No. 2:22-03864
MCKINNEY, ET AL. v. RITE AID CORPORATION, C.A. No. 2:22−03882

### Northern District of California

MAGUIRE v. WAL−MART STORES, INC., C.A. No. 3:22−03238
THOMPSON, ET AL. v. WALMART INC., C.A. No. 3:22−03408
GREENE, ET AL. v. SAFEWAY, INC., C.A. No. 4:22−03288

### District of Minnesota

SPRINGER, ET AL. v. COSTCO WHOLESALE CORPORATION, C.A. No. 0:22−01532

### Western District of Missouri

FOLEY, ET AL. v. WAL−MART STORES, INC., C.A. No. 3:22−05040
JANSSEN, ET AL. v. CVS HEALTH CORPORATION, C.A. No. 4:22−00366
GADDIS, ET AL. v. WAL−MART STORES, INC., C.A. No. 4:22−00367
NICKLES, ET AL. v. WAL−MART STORES, INC., C.A. No. 4:22−00368
STAFFORD, ET AL. v. CVS HEALTH CORPORATION, ET AL., C.A. No. 4:22−00369
STAFFORD, ET AL. v. CVS HEALTH CORPORATION, ET AL., C.A. No. 4:22−00370

### District of Nevada

CHAPMAN v. WALMART INC., C.A. No. 2:22−00919
MAGANA v. WALGREENS BOOTS ALLIANCE, ET AL., C.A. No. 2:22−00920

### Western District of Washington

RUTLEDGE v. WAL−MART STORES, INC., C.A. No. 2:22−00777
GUZMAN v. WALGREENS CO., C.A. No. 2:22−00810